Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re: )
)
KRISTIN M. JONES and )
PATRICK B. JONES, ) Case No. 13-bk-260
)
Debtors. ) Chapter 13
_____ )

## MEMORANDUM OPINION

Pending before the court is a dispute regarding whether Patrick and Kristin Jones (the "Debtors") must continue devoting disposable income to their confirmed Chapter 13 plan after they paid the base of the confirmed plan. Specifically, the Chapter 13 trustee filed a Notice of Increased Base in which she asserts that § 1325(b)(4) of the Bankruptcy Code requires debtors to make payments for 60 months or pay unsecured creditors in full. The Debtors objected and filed a motion to modify their confirmed plan by which they seek to reduce their plan payment to $0 beginning with their July 2017 payment.

For the reasons stated herein, the court will enter a separate order sustaining the Debtors' objection to the trustee's notice and granting the Debtor's motion to modify.

### I. BACKGROUND

On February 28, 2013, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. The Debtors' petition and schedules reflect that, at that time, they resided in Kingwood, West Virginia. Mrs. Jones worked as a substitute mail carrier for the U.S. Postal Service while Mr. Jones was a driver for Greer Industries, Inc. The Debtors' Schedules I and J reflect monthly net income of $1.99. Despite their tight budget, the Debtors proposed a Chapter 13 plan including bi-weekly payments of $236.13 to the trustee for sixty months.

On September 19, 2013, the court entered its order confirming the Debtors' Chapter 13 plan, which included a total base of $30,696.60 and provided an estimated pro rata return of 28% to unsecured creditors. The Debtors serviced their secured debt directly, making payments to

1

lenders secured by their residence and a 2011 Hyundai automobile. As far as the court can tell, the Debtors never missed a payment to the Chapter 13 trustee or at least remained sufficiently current that the trustee never filed a motion to dismiss their case.

On May 8, 2017, the Debtors filed a motion seeking permission to sell their home. According to the motion, which was essentially uncontested and granted by order dated June 5, 2017, the Debtors accepted an offer for $123,900 for their home. After satisfying costs of sale, including updating the home's electrical wiring, and the liens against the property, the Debtors received $42,200 less additional closing costs. Notably, the penultimate paragraph of the Debtors' motion notes their intent to "use the net proceeds to complete their plan payments in the approximate amount of $6,100.00 and to utilize the balance of net proceeds for a down payment on their future home."

On August 4, 2017, the Debtors filed a notice indicating their new address in Winchester, VA. Subsequently, the Chapter 13 trustee filed a notice asserting that the Debtors must pay additional disposable income into their confirmed Chapter 13 plan to meet a total base of $33,763.15. The Debtors filed a written objection, and the court held a hearing on September 19, 2017. After the hearing, the court ordered the parties to submit briefing on the issue, and the Debtors also filed a motion to modify their confirmed plan and amended Schedules I and J to support the modification.

According to the Debtors' amended Schedules I and J, Mrs. Jones improved her employment situation, obtaining a full-time mail carrier position with the U.S. Postal Service. Mr. Jones, however, remains unemployed since moving to Winchester. On the whole, the Debtors' suffered a reduction in monthly net income to -$1,987.24.

## II. ANALYSIS

The Chapter 13 trustee contends that § 1325(b)(4) requires the Debtors to devote disposable income to the repayment of their creditors for a period of sixty months unless they pay unsecured creditors a 100% dividend before the end of such period. She asserts that such a requirement exists regardless of whether the Debtors meet the gross base of their confirmed plan by other means— here, the Debtors' sale of their former residence. In support of her contention, the trustee relies upon *Pliler v. Stearns (In re Pliler)*, 747 F.3d 260 (4th Cir. 2014). Based upon her interpretation of *Pliler*, the trustee asserts that the Debtors must pay an additional $3,066.55 to satisfy their obligation under § 1325(b)(4).

The Debtors, on the other hand, assert that the court should permit their proposed modification based upon, among other things, the court's approval of their motion to sell, to which the Chapter 13 trustee did not object. Additionally, the Debtors assert that the court should grant their proposed modification based upon the decrease in their disposable income as reflected on their amended Schedules I and J. The Debtors assert that they have complied with the terms of their confirmed Chapter 13 plan in good faith and would not have proposed to sell their home and relocate had they known the trustee would then seek additional payments from them, particularly when their financial health has declined since then. Finally, the Debtors assert that the trustee's reliance on *Pliler* is misplaced because it is not controlling here.

Section 1325(a) of the Bankruptcy Code provides the circumstances under which a "court shall confirm a [Chapter 13] plan." "If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). For above-median income debtors, the "applicable commitment period" is five years, 11 U.S.C. § 1325(b)(4)(A)(ii), but may be shorter if the proposed plan provides for full payment of all allowed unsecured claims during a shorter period. 11 U.S.C. §1325(b)(4)(B).

At any time after confirmation but before completion of a plan, the court may modify a plan to, among other things, "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan" or "(2) extend or reduce the time for such payments." 11 U.S.C. § 1329(a). Notably, § 1329(a) "does not explicitly state what justifies such a modification," *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 241 (4th Cir. 1989), but a proposed modification must comply with §§ 1322(a) and (b), 1323(c), and 1325(a). 11 U.S.C. § 1329(b)(1).

In addition to *Arnold*, the seminal case regarding post-confirmation modification within the Fourth Circuit is *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143 (4th Cir. 2007). In *Murphy*, the court reaffirmed its decision in *Arnold* and held that the court's first inquiry when faced with a proposed modification is whether "the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition." 474 F.3d at 150. If the debtor experienced such a change, the court can then determine whether the proposed modification "meets one of the circumstances listed in § 1329(a)," and "whether the proposed modification complies with § 1329(b)(1)." *Id.*

3

In *Pliler*, the Fourth Circuit held that an "applicable commitment period" under § 1325(b)(4) is a temporal requirement to obtain confirmation of a Chapter 13 plan. *See In re Pliler*, 747 F.3d at 264. Notably, the temporal requirement exists even if a debtor has negative projected disposable income. *Id.* at 265. As the Fourth Circuit notes, "debtors can and do benefit from windfalls such as inheritances or other unforeseeable income after plan confirmation but before their Chapter 13 proceedings are closed." *Id.* at 265 (citing *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013). The court therefore held "that a plain reading of the Bankruptcy Code, and [§] 1325 in particular, mandates that an above-median-income debtor maintain a bankruptcy plan for five years unless all unsecured creditors are paid in full . . . ." *Id*. at 266. Notably, however, *Pliler* "can be distinguished from the situation facing this court based on the procedural status of each plan." *In re Runnels*, 530 B.R. 626, 633 (Bankr. W.D.N.C. 2015).

Having considered the parties' respective arguments and the legal authority on the issue, including *Pliler*, the court finds it appropriate to sustain the Debtors' objection to the trustee's Notice of Increased Base and grant their motion to modify their confirmed Chapter 13 plan. First, the court believes that the Debtors are entitled to relief if for no other reason than the trustee's failure to object to their proposal to sell their home and "use the net proceeds to complete their plan payments in the approximate amount of $6,100.00 . . . ." As the Debtors note in their objection to the trustee's notice to increase the base of their plan, they would not have proceeded to sell their home and relocate if the trustee raised this issue in an objection to the sale. In fact, that would have been the time for either party to seek modification of the Debtors' confirmed plan. This case is now in an awkward posture where the Debtors are essentially seeking modification *ex post facto*.

Setting that aside, however, the court finds that the Debtors are entitled to relief based upon the merits of the extant dispute—primarily whether they are required by §1325(b)(4) to devote additional disposable income to the repayment of their unsecured creditors. Specifically, the court finds that *Pliler* is not controlling here based upon the well-reasoned and persuasive analysis in *Runnels*, and that the Debtors' proposed modification is otherwise appropriate under the circumstances. Importantly in that regard, *Pliler* arose on a Chapter 13 trustee's objection to confirmation of a proposed plan that did not comply with § 1325(b)(4); unlike the situation at hand involving modification to a plan already confirmed. Despite dicta discussing modification, and based upon the reasoning set forth by the *Runnels* court, the court believes that *Pliler*'s applicability is limited to the confirmation context. *Id*. at 634 (noting that the discussion of § 1329

4

in *Pliler* does not include a holding that Chapter 13 plans cannot be modified to a period shorter than the applicable commitment period at confirmation). In fact, a debtor may modify to "extend or reduce the time for such payments." 11 U.S.C. § 1329(a)(2).

Turning to whether modification is appropriate under *Arnold* and *Murphy*, the court again finds that the Debtors are entitled to relief. Specifically, the court finds their proposed modification is the result of a substantial and unanticipated change in their financial condition. In that regard, the Debtors note that they decided to sell their home, in which they possessed equity, after being in bankruptcy for several years. They believed that the sale would enable them to pay the remaining base of their confirmed plan and relocate so that Mrs. Jones could achieve full-time employment; Mr. Jones presumed he would not have a problem finding work. Put simply, they envisioned a better future after relocating. Ultimately, the record reflects that Mr. Jones was never able to find employment after moving with his wife such that their economic picture deteriorated despite Mrs. Jones increasing her income. Specifically, the Debtors' net disposable income is now almost negative $2,000. Although the Debtors voluntarily relocated, the court cannot construe their decision to do so four years after confirmation of their plan as anything other than a substantial and unanticipated change. The significant passage of time, when coupled with new opportunity to secure a better financial future, persuades the court that the Debtors have established a substantial and unanticipated change justifying modification. Moreover, based upon the court's analysis of *Pliler*, the court finds that modification to reduce the Debtors' payment to $0 would be appropriate even in the absence of reduced disposable income. For instance, even if the Debtors' disposable income remained steady after relocating, the court believes that nothing in *Pliler* requires the Debtors to continuing paying disposable income once they paid the base of their confirmed plan.

Additionally, the Debtors' proposed modification—essentially to reduce the time for payments to unsecured creditors—is one of the modifications authorized by § 1329(a). Notably, however, the Debtors are not proposing to obtain a discharge and exit bankruptcy early. Rather, they seek to limit their payments to the amount of disposable income already paid, which satisfied the base of their confirmed plan. The court finds such a proposal to be sound in light of the Fourth Circuit's decision in *Pliler* insofar as it recognizes the ability for debtors to receive a windfall or other substantial change that should inure to the benefit of unsecured creditors. To be clear though, the court is of the opinion that such changed circumstances will lead to additional payment for

unsecured creditors only if such payment is warranted based upon additional disposable income or the acquisition of nonexempt property.

Finally, the court finds that the proposed modification complies with § 1329(b)(1) of the Bankruptcy Code. In that regard, the court notes that Congress explicitly made only §§ 1322(a) and (b), 1323(c), and 1325(a) applicable to modification after confirmation. Although § 1325(a) includes the requirement that "(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title," the court finds such language to be superfluous in the context of post-confirmation modification. Moreover, the specific language of § 1329(b)(1) must control when viewed in conjunction with the general nature of § 1325(a)(1). As such, and as the court held above, *Pliler* is not applicable to the facts of this case, and the Debtors may modify their confirmed Chapter 13 plan.

### III. CONCLUSION

Based upon the court's analysis herein, the court finds that the temporal requirement of § 1325(b)(4) does not prohibit the Debtors from modifying their confirmed plan to limit, to the extent necessary, the dividend to unsecured creditors. Specifically, the Fourth Circuit's opinion in *Pliler* does not require the Debtors to devote additional disposable income to the repayment of creditors in the absence of acquiring additional disposable income or nonexempt property. Therefore, the court will enter a separate order sustaining the Debtors' objection to the trustee's Notice of Increased Base and granting the Debtor's motion to modify.[1]

---

[1] Henceforth, the Chapter 13 trustee shall file a motion to modify a confirmed plan to the extent she believes a debtor should devote additional disposable income or nonexempt property to the repayment of unsecured creditors. Her notice in that regard is insufficient to resolve the issue because such a determination is solely within the court's purview.